Thank you. The next case, the next argued case is number 19, 1530 Chevron U.S.A. Inc. v. University of Wyoming Research. Mr. Coyne. Thank you, Your Honor, and may it please the Court. With us on the line, on the public line, is Frank Turner and Camille McHale, who are with Chevron U.S.A. in Houston. The theme that I'd like to present to the Court this morning is this case presents a recurring problem of the Board reaching a broadest construction that, under quoso, that is simply not reasonable in view of the common ordinary meaning of the term and the specification. Now, superficially, it may seem that what the Board's done here is saying that the dissolving step occurs in the column so that the gradually changing step must also be in the column. That might make sense, but that's not what the specification says. The limitation is gradually and continuously changing the alkane mobile phase solvent to the final mobile phase solvent, and where that occurs is at the solvent inlet. That is undisputed. The claim language is clear. It's the common ordinary meaning of gradually and continuously changing to be incrementally reducing the first while simultaneously incrementally increasing the second over the same period of time without interruption. That's how someone of ordinary skill would understand it, and that is exactly how the specification describes it. Instead, the Board latched on to 24 words out of about an 800-word description at pages 682 to 684 of the appendix. It's paragraphs 37 to 41 that describe this step. The Board ignored the rest of it and latched on to only those 24 words and said, oh, no, you've given it some unique lexicography. Granted, that Board's decision is inconsistent with the common ordinary meaning, but there was no clear intent to redefine this term in that way. That four, three pages describes it very clearly as this incremental reduction and incremental increase going on simultaneously. Let's look at what isn't disputed here. There are a number of things the parties have actually agreed upon in the briefs, so let's try to get that out of the way. First off, the claim construction here appears to be dispositive. The Board thought so, and the parties think so. The canons of construction that apply are very clear. You can't rely on the extrinsic evidence because the intrinsic evidence is ample here. The meaning that you give this phrase needs to be consistent with the common ordinary meaning of the term. Mr. Coyne? Yes, Your Honor. This is Judge Schall here. Thank you. Let me ask you, the claim speaks, and I'm looking now at 695 of the Joint Appendix, paragraph B, gradually and continuously changing the alkane mobile phase solvent, et cetera. And we also have, is that the nub of the claim here, gradually and continuously changing? Yes, Your Honor, it is. And we have, I think, it seems to me, that the key specification provisions here, paragraph 37 and paragraph 38, with respect to this part B, and paragraph 37 talks about defining gradually and continuously adding, I think. Yes, Your Honor. That is how the inventors described it, is you're going to change it by adding, by incrementally reducing the amount of the first solvent and incrementally increasing, adding the second solvent at the solvent inlet. So you're saying the claim talks about gradually and continuously changing, but that that gradual and continuous change is obtained or comes about as a result of gradually and continuously adding. Is that what you're saying? Yes, Your Honor. Gradually and continuously adding the second in increasing amounts while you're reducing the amount of the first that you're adding. And you have to do it continuously over a period of time. That's what the specification describes. The description of paragraph 38 that you pointed out and at paragraph 40 are the same in terms of the process. What's exemplary about those two examples is one is the first solvent change, and it gives a sample solvent you can use. And the second one is the second solvent change, and it uses different solvents. But the process is identical in both. It's the same incremental change, the same incremental addition. That's how the inventors described this invention. So what is also agreed is that the specification provides ample additional description that both Wyoming and the Board ignored. And what the Board has done here is come up with a construction of gradually and continuously changing the alkane mobile phase solvent to a final mobile phase solvent that would cover any type of change. They say right in their opinion, even a sudden, abrupt, immediate switch of 100% of one solvent to 100% of a different solvent would, in the Board's view, be gradually and continuously changing. That just doesn't make sense based on this specification. What we think happened here is that the Board was led into error by Wyoming. They relied on the extrinsic evidence of experiments done by Professor Labadee and his testimony. And although they say they didn't rely on it for claim construction, it's abundantly clear that they relied on it for the written description issues. There really are five reasons why we say this is wrong. Number one, the Chevron inventors didn't provide a unique, contrary definition of gradually. Basically, the sentence they latch onto talks about incremental removal of the first solvent. Klein, let me ask you, this is Judge Schall again, please. Again, the claim says dissolving the first amount and the second amount by gradually and continuously changing. So, what you're seeking to achieve here is a gradual and continuous change. That's what's claimed. But the adding isn't really claimed, is it? Well, it is, Your Honor, because the adding is described in the study. You accomplish the gradual and continuous change by slowly reducing the amount of the first solvent while you're, at the same time, increasing the amount of the second solvent. You're making this gradual, continuous change. Present tense verb. It didn't say effecting a change downstream in the column. It says gradually and continuously changing the first solvent to the second. Where does the solvent that you – and I'm parading my ignorance here, Mr. Klein, of chemistry, so forgive me, okay? Where do these solvents come from? They're sitting outside the column and then put into the column? Yes, Your Honor. You have a supply of multiple solvents typically in these setups. For example, the patents both show a diagram, a schematic of the setup. You'd have vats of solvents with tubing coming out of it to a valve, and then that would supply the column. You'd also have an injection point in that tubing for the sample you're putting in. And you run the first solvent through the tubing, through the column, inject the material. Some of it will precipitate out on the beads in the column, and then you run another material solvent through it to try to re-dissolve some of that. That's what you're trying to do to measure. You're precipitating these asphaltenes and then re-dissolving them with a series of stronger solvents. Now, just so I make sure I completely understand here, paragraph A of the claim, or limitation A, that's what's described in paragraph 35 of the joint appendix, is that correct? I'm sorry, paragraph 35? Yeah, paragraph 35 of the joint appendix at 682, as I understand it, and correct me if I'm wrong, please, is speaking to limitation A, precipitating an amount of the asphaltene from the liquid. Is that correct? Yes, Your Honor. Okay. And then 37, 38, 39, 40, and 41 are talking about this process for gradually and continuously changing. The problem here with the Board's construction is that it's relying on lexicography. Yet this Court's authority in Olson, Thorner, Merck v. Teva, and Cora, there's dozens of cases that make it clear in order to have specific lexicography, there has to be a clear, deliberate, precise intent to yield an uncommon definition. There's nothing in this section that does that. Mr. Coyne. Yes, Your Honor. Mr. Coyne, Judge Laurie here. As you know, I am a chemist, but there isn't much chemistry here. It's trying to figure out what these unclear documents say. And we've got an expert Board that made a judgment, and why shouldn't we rely on it? Well, Your Honor, because first off, this is an issue of de novo. This is claim construction, and it's reviewed de novo by this Court based on the intrinsic record. And all the parties and the Board agree that the intrinsic record is sufficient to resolve this. What about the definition in the 814 application? The term gradually is used herein to be understood to mean that the alkane mobile phase solvent is incrementally removed by continuously adding a phase. So it's incrementally removed. That's the gradual part, isn't it? Well, no, Your Honor, it's part of it. Literally, it's not possible to incrementally remove only one solvent from the column. Well, it's incrementally removed because of what has happened earlier. Right, it's incrementally removed because you're incrementally decreasing the amount of that first solvent while you're increasing the amount of the second so that you're going to be ‑‑ that's what the rest of the four paragraphs explain. What the Board did is latched on only that and gave it a meaning that interpreted it. It's itself, does incrementally modify only the removal, or does incrementally in that sentence also modify the addition? And we think it modifies both because the next four paragraphs explain that in detail. What the Board did is adopted one of those two interpretations in a way that's inconsistent with the balance of this portion of the specification and say, no, no, we're going to look at it downstream after all the mixing and all the turbulent mixing has occurred in the column where it's going to naturally get mixed up. But what the specification tells you is you're going to do this in a very deliberate fashion because you're trying to get a specific kind of profile out of it. You don't want just random mixing in the column. You may not be hitting the sample that's precipitated with the right concentration. What you're trying to do is do a very controlled mixing so that that precipitate is seeing a very specific mix of solvents over a period of time. Excuse me, Judge Shaw here again. How does the word, in your view, how does the word continuously play into the discussion we're having here? Well, it plays in two ways. One, it has to be continuously changing. What Wyoming does isn't a continuous change. It's a sudden stop. So even if the Board could somehow… Well, continuously adding it says. Yes, that's how the inventors describe their invention. I'm going to make this change by continuously adding less of the first and adding more of the second, and that's what they say in paragraphs 38 and 40. There's multiple other reasons why it's incorrect. Number one, it ignores the continuously changing. You just ask about Judge Shaw. You're not continuously changing, and I see that I'm into my rebuttal time. No, finish your thought, Mr. Glenn. Okay. The continuously changing alone is a reason why it's wrong because what in Wyoming's process, there is no continuous change. It's a sudden, abrupt change, and that's undisputed. I'll reserve the rest of my time, Your Honor. Okay. Thank you. We'll hear from the other side. Mr. Santangelo? Good morning, Your Honors. Luke Santangelo on behalf of the IFALE, the University of Wyoming Research Corporation. We request that this Court affirm the decision below. I think this is an interesting case that I actually believe ought not be that difficult. It's a case where Chevron set out an express definition in their specification that it now doesn't like. As Judge Lurie pointed out, this express definition is set out with the words, shall be understood to mean, very mandatory words. And so the question becomes, was the PTAP correct below in applying that explicit, intrinsic definition to construe the claim element and then to decide the two motions? It applied that... Mr. Santangelo? Excuse me. Go all here. Mr. Coyne said, and I think you'll correct me if I'm wrong if you understood him differently. He said, look, what we're doing here, we're claiming gradually and continuously changing the solvent, and that's what's in the claim. And we do that, and then he would point to paragraph 37 and 38, and we do that by gradually and continuously adding, okay? And he says the Wyoming process doesn't do that because all of the solvent goes in in one lump, so to speak. What's wrong with that? There seems to be a certain logic to what he says there. Well, Your Honor, I think it was, as you pointed out in your questioning of Mr. Coyne, the definition of the term gradually explicitly states that it involves continuously adding the solvent to achieve a change. The change is something that exists in the context of the claim element, which is dissolving a first amount and a second amount of the asphaltenes by gradually and continuously changing the solvents. That change must of necessity occur where the asphaltenes will be dissolved. As was questioned earlier, this is a situation where solvents are fed into a column. The column has, in essence, beads inside of it. That's called a stationary inert. Well, let me ask you this, Mr. Santangelo. The language at the bottom of page 682 says the term gradually is used here and should be understood to mean the alkane mobile phase solvent is incrementally removed from the column. Then, though, you have in paragraph 38 on page 683, gradually and continuously added to the column. Now here, gradually is being used in a different context. Before it was being used with respect to gradually removing. Now it's being used with respect to gradually adding to the column. Doesn't that sort of suggest that you gradually remove by gradually adding? No, I would disagree, Your Honor, because I believe the explicit definition sets out, and it only makes good logical sense because we're talking about dissolving the asphaltenes that are in the column. The definition sets out that gradually, as used herein, shall be understood to mean that the alkane solvent, the first solvent, is incrementally removed from the column over a period of time. That's, in fact, what defines whether there is a gradual change or not. Let me, and I apologize for jumping in, but a thought comes to mind, and I don't want to lose it, Mr. Santangelo. Do you continuously add? How do you fit in up at the top of page 683 there? We're still, I guess, in paragraph 37. By continuously adding a final mobile phase solvent, et cetera, do you think that the Wyoming process can be said to continuously add when it puts it all in at once? Unquestionably, it is. The put it all in at once is not an accurate statement. In fact, what happens, and there is a discussion throughout both the 425 patent, its specification, as well as the two priority cases that talk about continuous flow systems. Yes, it is continuously added. There's a transition from a first solvent to a second type of solvent, but throughout the whole process, it is a continuous flow process. So, yes, there is continuously adding. But there's a difference, isn't there, between continuous flow and continuous adding? The continuous adding is what causes the continuous flow in the column. So I don't know how to answer your question, Judge Newman, just Judge Newman. The continuous adding is what causes the continuous flow. So, yes, we have a continuous flow system because we are continuously adding solvent to the column. And it's that continuous addition that, in fact, as the definition requires, causes the incremental removal of the first solvent from the column. But couldn't incremental adding provide continuous flow? Incremental adding could be presumably in steps. The challenge I have, Judge Newman, is in understanding the word incremental. And so would adding- Well, what's our challenge as well? We need your help. Well, incremental was defined by the PTAB, in this instance, as having some amount of change, positive or negative. That was in the PTAB decision. And that's not the focus of the appeal. But in this instance, the question becomes, is there incremental removal, which is in the definition? And, indeed, there is incremental removal, as is shown both by the fluid dynamics of the column and by the test result that explains what transpires inside the column, just to confirm that understanding. So what the invention involves is a precipitation of beads, a precipitation of asphaltene, excuse me, onto the beads in the column and then sequentially dissolving off those beads the asphaltenes. That sequential dissolving is where the gradual and continuous change of the solvent is necessary so that you can glean the information that tells you what type of crude oil you're dealing with. In this instance, the claim itself sets out, in the particular element, dissolving first and second amounts of the asphaltenes by gradually and continuously changing the first solvent to the final solvent. In fact, what does it involve? It involves dissolving a specific substance, the asphaltenes, which only exist inside the column. How are those dissolved? They are dissolved by gradually and continuously changing the solvent within the column. How do we know? I mean, the problem here that I have, here we have a matter of interference priority, which is being determined not on which side did what at what point of time before the other, but whether a particular claim can be construed in a way that may or may not be supported by the specification. We don't really get into that. And priority is decided without really knowing which side did which experiment or provided what conception evidence or all the rest of it. This seems to me to be unusual. I would disagree, Your Honor, that we don't know what side did what. Exactly. Exactly the problem. We don't know. No, I would disagree with that statement, Your Honor, because in this instance, in 2005, the University of Wyoming Research Corporation applied for a patent explaining exactly the situation of this continuous flow system flowing through the beads and changing the solvents. And, indeed, in 2005, four years before Chevron even applied for their patent application, we know that the beads were causing that gradual change in the solvent, even in the particular instance, which is only one example, that there was a step change from one solvent to another. In fact, we do know that four years before, the University of Wyoming was achieving gradual and continuous change of the solvent. How do we know that? Pardon? How do you say we know? How do we know that? Because we know that even when there is a step change, something that is unequivocally disclosed in the 2005 priority filing, we know that even when there's that step change, as the solvents come out of the column, which is where the explicit definition requires the determination to be made, the first solvent is incrementally removed so that there is a gradual and, in fact, continuous change of the solvents. Mr. Santangelo, if Judge Scholl, again, if I could ask you, please. Judge Lurie was focused on paragraph 37, bridging 682 and 683 with Mr. Coyne, and in paragraph 37 on page 683 at the top, we have some references to time periods. You're no doubt familiar with that, okay? Yes, sir. How does that, in your view, inform or help us in the analysis which we're going through here? In other words, in your view, how do these references to five minutes to about 120 minutes in any way give an answer to the question we're struggling with here? Well, I think perhaps underlying that question is some sort of intuitive sense with respect to whether those time periods are slow enough or such. The challenge is there's no time period specified in the Chevron specification with respect to gradual. The gradual is something that just achieves incremental removal. So to answer your question, Judge Scholl, I believe that the time periods are not something that are necessary to understand whether there is gradual or not. The gradual change is explicitly defined by Chevron, and we're simply tracking that definition because that's something that Chevron said shall apply. Let me ask you just a... Do both the Chevron... This refers to gradually and continuously changing from the alkane mobile phase solvent to the final mobile phase solvent, and it says can occur during the period of... And it goes on. Do both the Chevron process, purportedly gradually putting material in, and the different Wyoming process yield a change within these time periods? Is that an understandable question? Well, I'll try and answer it this way, Your Honor. Do you understand what I'm asking? I believe I do. Okay. And I would say do they tie to these particular time periods? Certainly they could because there's no time period specified. But more importantly, as I would urge the court to consider, the definition and the use of the word gradual is, as the PTAP acknowledged in their decision below, the challenge is there are no time periods for that. So what is gradual and what is continuous? There's no quantified threshold to apply to, and that's a bit of a challenge with the Chevron definition. But the truth is it's the Chevron definition, and they are stuck with it because they said it shall be understood to mean, and indeed, the Wyoming process meets exactly that. So to answer your question, yes, both processes meet those requirements. And indeed, while Chevron wants to distance from their own definition, they try to do it by using two examples, both of which acknowledge that the change is in the column, and they try to use those examples as situations where they can distance themselves from an explicit thing that's in the specification. There's no inconsistency. The board followed exactly the definition of Chevron's specification, and so the decision below should be affirmed. Okay. Any more questions for Mr. Santangelo? No. No, I'm fine. Thank you.  Thank you. We'll hear from Mr. Coyne. Thank you, Your Honor. Returning to the last question on this five to 120 minutes, no, Mr. Santangelo is just flat wrong, and I would direct you to page 10 of the red brief. The experiments that they're relying on, post hoc, extrinsic experiments show a change over in the column of less than one minute. That is outside the range that is disclosed in the specification, the Chevron specification, which is the smallest is five minutes. And getting back to Judge Newman's question on is this unusual, yes, very highly. And we do know that whatever it is that Wyoming's doing does not satisfy the descriptions in paragraphs 38 and 40, the only process for the gradual and continuously changing that Chevron gives, because they don't do it that way. They put in extrinsic evidence showing they do it in less than a minute, and they don't do it with this process. Instead, what they do is a sudden, immediate switch of one solvent to the other, and they've admitted that in their red brief at page 36, lines 11 to 12. It is not itself that gradual and continuous change. And this is throughout the brief at three, at page nine, 15, two places on 36, 40, 43, 45, 47. So when Mr. Santangelo says, no, they haven't admitted it, they have. What they rely on is to try to backfill it with continuous or with mixtures. But there's no mixture that shows anything like what's in 38 to 40, and nothing that shows the kind of time frame that we're talking about. In conclusion, really there's a lot of red flags here about the board's construction and what Wyoming is arguing. There is no clear disclaimer, disavow, to support any argued lexicography. Sure, what the board did is inconsistent with the common ordinary meaning, but that wasn't a definition we gave. Starting at 37 and continuing down to 41, that description is entirely consistent. They're taking one set of 24 words out of context and ignoring the balance of the spec. They're ignoring the continuously changing. That's a criteria in the claim itself. It's a limitation. It doesn't say downstream in the column. It says continuously changing, and where that change occurs is where you have to look at that. The construction that we're arguing is this incremental reduction with an incremental simultaneous increase is what's described in the spec, and the board's construction renders that term meaningless. Under AREAD, the extrinsic evidence should not have been used. I see that I'm out of time, Your Honor. Thank you. Let's see if there are any more questions. Judge Lurie? No. Anything else? Judge Shaw? No. Okay. All right. Thank you both. The case is taken under submission.